UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
In re CURRENCY CONVERSION FEE
ANTITRUST LITIGATION

MDL Docket No. 1409
and
Baker v. VISA, 06-CV-0376 (S.D.Cal.)

_____

**OBJECTOR HERBERT BERGER'S OPPOSITION TO PLAINTIFFS' MOTION TO REQUIRE APPEAL BONDS**

This Document Relates To:

ALL ACTIONS.
----------------------------------------------------------X

Class member and objector-appellant Herbert Berger respectfully submits this memorandum of law in opposition to plaintiffs' request for an order requiring Mr. Berger and the other appellants to post appeal bonds.

## I. INTRODUCTION

Plaintiffs' request for appeal bonds from the various appellants, including Mr. Berger, is a transparent attempt to force these class members to abandon their appeals without ever getting to the merits of those appeals. Ironically, these appellants are members of a class action, whose principle objective is to allow persons of limited means to pursue justice by combining their claims, generally of relatively small amounts, in one proceeding. However, in order to intimidate appellants and discourage them from pursuing their appeals, plaintiffs have grossly exaggerated the costs they say they are entitled to on appeal and, with respect to Mr. Berger, have grossly mischaracterized the nature of Mr. Berger's appeal and the motivation of Mr. Berger's counsel in prosecuting this appeal.

Most importantly, and contrary to plaintiffs' representations in their motion, Mr. Berger's appeal is <u>not</u> a challenge to the approval of the settlement nor did Mr. Berger object to the award of attorneys' fees. Rather, Mr. Berger is appealing this Court's denial of his application for attorneys' fees and expenses. Mr. Berger made that application after working hand-in-hand with plaintiffs'

counsel and defendants' counsel to effect changes to the "notice" documents that were going to be disseminated to class members as part of the settlement process. These changes were negotiated by the parties; they were included in the various notice documents, including the website; and they provided a benefit to class members. Significantly, all of this work was done more than six months before Special Master McGovern even became involved in the notice and claims administration process.

The criteria for evaluating whether an appeal bond should be imposed are discussed below and simply do not warrant the ordering of such a bond.

## II. ARGUMENT

### A. Rule 7 Of The Federal Rules Of Appellate Procedure.

Under Rule 7 of the Federal Rules of Appellate Procedure, a district court "may" require an appellant to file a bond or provide other security to ensure payment of costs on appeal." Fed. R.App. P. 7. When deciding whether to require an appellant to post an appeal bond, the district court considers several factors: (1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay appellee's costs if the appeal loses; (3) the merits of the appeal; and (4) whether the appellant has shown any bad faith or vexatious conduct. See Baker v. Urban Outfitters, Inc., 01 Civ. 5440(LAP), 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006). A fair analysis of these criteria require the denial of plaintiffs' motion.

### 1. Appellants' financial ability.

Plaintiffs state in their brief (p. 4) that the financial ability factor weighs in their favor because none of the appellants has shown that he or she cannot afford to post a bond. This contention is quite silly because until plaintiffs filed their motion, none of the appellants had ever

been asked or required to demonstrate financial ability or inability. At best, this factor should have been characterized as neutral by plaintiffs.[1]

Interestingly, it appears that plaintiffs are seeking an appeal bond for the full amount of their estimated costs from <u>each</u> of the 12 appellants. This means that each appellant would, if the motion was granted, have to bond $572,000 in estimated expenses. Plaintiffs have not explained why a bond for the full amount of the estimated costs should be required of each appellant nor have they cited any legal authority for their request.

More importantly, as will be discussed below, plaintiffs' figure of $572,000 is an inflated number that improperly includes items to which plaintiffs would never be entitled to recover. Plaintiffs have identified virtually every conceivable cost associated with administering the settlement process and defending the appeals, including $331,000 of costs not included, mentioned, referenced or hinted at by Rule 39. Requiring Mr. Berger and the other appellants to post an appeal bond is unwarranted and is nothing more than a scare tactic to get Mr. Berger and the other appellants to withdraw their appeals.

**2.    Risk of nonpayment.**

Turning to the second factor, plaintiffs allege that allowing appellants to appeal without posting a sufficiently large bond would expose the Settlement Class to the grave risk that it will not be reimbursed for the substantial expenses imposed by the appeal.

Notably, plaintiffs do not allege any substantial facts in furtherance of this contention. Appellant Berger's assets are within the United States; he has complied with all prior orders of payment; and he has never filed for bankruptcy. See <u>Adsani v. Miller</u>, 139 F.3d 67, 70 (2d Cir.1998), cert. den. 525 U.S. 875 (1998) (The court found an appeal bond necessary because the

---

[1]    Mr. Berger is retired and lives on a fixed income. He will provide an affidavit concerning his financial condition if the Court deems it necessary.

3

appellant had no assets in the United States); Baker v. Urban Outfitters, Inc., 01 Cv. 5440(LAP), 2006 WL 3635392, at *1 (S.D.N.Y. Dec. 12, 2006) (The court found a risk of nonpayment where appellant failed to comply with prior orders to pay other party's costs); Watson v. E.S. Sutton, Inc., 02 Civ. 2739 (KMW), 2006 WL 4484160, at *2 (S.D.N.Y. Dec. 6, 2006) (The appellant's intention to file for bankruptcy constituted a risk of nonpayment).

Plaintiffs appear to imply that there is a risk of nonpayment because of the magnitude of the costs they expect to incur defending the appeals and continuing the settlement activities. As noted above and as described below, plaintiffs' cost number is fatuous. Plaintiffs have failed to establish a risk of nonpayment of a real cost figure.

### 3. Appellant Berger's appeal has merit.

Mr. Berger's appeal has merit. While the Court states at page 40 of its October 22, 2009 Memorandum & Order that the changes to the Notices "were entirely on the Court's initiative and devised by the Special Master and the parties," Mr. Berger respectfully disagrees with the Court's conclusion. As set forth in the affidavit of Daniel A. Osborn that accompanied the fee and expense application, he negotiated changes to the Notices well before the Special Master ever got involved in the MDL litigation.

As the Court described in its Memorandum & Order, this case began on February 28, 2001 when certain plaintiffs filed the first of more than 20 class action complaints challenging the imposition and concealment of foreign transaction fees by defendants VISA, MasterCard and a number of banks. About six months later, on August 17, 2001, the Judicial Panel on Multidistrict Litigation ordered the consolidation of the various cases, styled them In re Currency Conversion Fee Antitrust Litigation, MDL 1409, and transferred them to the Southern District of New York.

On December 13, 2004, another foreign transaction fee case, Baker v. VISA International Corp., et al., No. GIC 839908, was filed in state court in California. On February 16, 2006, the

4

MDL defendants removed the Baker action to the United States District Court for the Southern District of California. At the time the Baker case was removed to federal court, the MDL plaintiffs and defendants were having discussions aimed at settling the MDL litigation. On July 20, 2006, the parties in the MDL litigation signed a settlement agreement (the "MDL Settlement Agreement") intended to resolve all of the MDL proceedings.

At around the same time, the Baker plaintiffs were having discussions with defendant VISA in an effort to settle the Baker action. The settlement of that case was contingent upon the Court's approval of the settlement of the MDL litigation.

On August 23, 2006, Mr. Epstein, one of the attorneys representing Mr. Berger, contacted Mr. Osborn to see if Mr. Osborn would be interested in associating in as counsel in the Baker case to review a number of documents, including (i) the MDL Settlement Agreement; (ii) the proposed settlement agreement in Baker, and (iii) all of the ancillary documents related to those two agreements, especially the various notices (the "Notices") to be sent to class members. Mr. Osborn agreed, and between August 24, 2006 and September 11, 2006, the two lawyers had nearly daily telephone conversations about the two cases; reviewed various drafts of the proposed Baker settlement agreement; reviewed the MDL Settlement Agreement, particularly the Notices to be disseminated to the MDL class members; and prepared for the September 11, 2006 hearing on the motion for preliminary approval of the MDL settlement.

Prior to the preliminary approval hearing, the Baker plaintiffs and defendant VISA reached a tentative settlement agreement of the Baker case, including an agreement as to most of the issues concerning the Notices. There were, however, some issues concerning the Notices that remained unresolved.

On September 11, 2006, counsel for class member Berger (Mr. Epstein and Mr. Osborn) appeared at the hearing on the motion for preliminary and objected to the MDL settlement on the

5

ground that the Notices were constitutionally defective because they failed to provide adequate information to the class members to enable them to make a reasoned, informed judgment about whether the settlement was fair and whether to participate in the settlement, object to it, or exclude themselves. Specifically, counsel argued the following:

A. Although the proposed Notices recited the total dollar amount of the settlement, they did not disclose the potential damages that could be recovered if the case went to trial, so class members could not compare what they (collectively) were receiving with what they might receive if they took the case to trial and won.

B. The release of the "Spread Claim" was not sufficiently disclosed. This claim had been asserted in the Baker action but not the other cases and objector Berger wanted to ensure that class members knew they were releasing this claim as part of the MDL settlement.

Throughout the month of September 2006 and early October 2006, counsel for Mr. Berger negotiated with plaintiffs' lead counsel and counsel for the various defendants for changes to the Notices. Those changes were ultimately accepted and were included in the Notices that were disseminated to class members.

The negotiations involved more than a simple request to include objector Berger's proposed language. Both defendants' counsel and lead counsel for the plaintiffs initially took the position that they would not include the requested information. Once they agreed to include it, there were extensive negotiations about the exact language that could and should be used. When the parties were struggling with language acceptable to everyone, it was agreed that the website being developed for the settlement would include information in the "Frequently Asked Questions" section to provide even more information. Counsel for Mr. Berger were involved in the drafting and reviewing of the questions and answers that were eventually incorporated into the settlement website.

In sum, counsel's work included countless conference calls; drafting proposed language for the Notices and the website; innumerable changes and revisions to that language; submissions to the Court; correspondence with counsel; and a host of other work designed to ensure that the Notices provided the MDL class members sufficient information to make an educated, informed decision about the MDL settlement.

On October 6, 2006, the parties (the <u>Baker</u> plaintiffs and the MDL plaintiffs) formalized the terms of their agreement concerning the form and content of the Notices to be sent to the MDL class members, as well as their agreement concerning additional content on the settlement website (and toll-free telephone hotline). This agreement resolved the objections to the Notices raised by Mr. Berger during the September 11, 2006 preliminary approval hearing.

On October 10, 2006, counsel for Mr. Berger wrote to the Court and advised the Court that after extensive discussions with counsel for the various parties over several weeks, the Berger objections had been resolved and Mr. Berger was withdrawing his objections to the MDL settlement.

On January 30, 2008, Mr. Berger filed an application for fees and expenses for his counsel. This Court denied that application on the ground that any changes to the Notices had been accomplished at the Court's initiative and with the assistance of Special Master McGovern. In fact, all of the changes effected by Mr. Berger were done through Mr. Berger and his counsel some six months before Special Master McGovern ever became involved in the MDL proceedings. Mr. Berger's appeal has merit. This factor weighs in favor of not requiring a bond.

**4.      Appellant Berger has not shown any bad faith or vexatious conduct.**

The final factor also weighs in appellant Berger's favor. Mr. Berger has not engaged in any bad faith or vexatious conduct. As set forth in the preceding section, Mr. Berger simply negotiated

changes to the notice materials and sought reimbursement of the attorneys' fees and expenses incurred in obtaining a benefit for the class members.

**B.      Costs Covered By The Appeal Bond.**

The question of whether to impose an appeal bond is distinct from the issue of what costs the bond can and should cover. Plaintiffs contend in their brief (pp. 10-12) that the appeal bond should include not just the taxable costs allowed by Federal Rule of Appellate Procedure 39, but the costs associated with the "delay and disruption" of the settlement administration and the attorneys' fees plaintiffs claim they will incur in defending the appeals. Plaintiffs are wrong.

**1.      Rule 39**

Rule 39 of the Federal Rules of Appellate Procedure governs the taxation of appellate costs. It expressly permits taxation of the costs of depositions, trial transcripts and exhibit copies that are introduced into evidence or used in connection with motion papers. The Rule also outlines the procedures to be followed by a party seeking to have appellate costs taxed. See Fed. R.App. P. 39(c); Fed. R.App. P. 39(d) - (e).

Here, plaintiffs' seek a bond for the estimated costs of copying, binding, and serving of briefs for the Second Circuit. Plaintiffs, however, have failed to provide any itemization of those costs. Instead, the four-paragraph declaration of Mr. Daley simply states that plaintiffs estimate that they will spend $16,000 in copying, binding and distribution costs based on an estimate of $.25 per page. According to plaintiffs' calculations, they will be copying, binding and serving nearly 64,000 pages.

**2.      Costs of delay and disruption of settlement administration.**

Plaintiffs also assert that the appeal bond should include extraneous administrative costs related to the collection and sorting of mail, extending the lease for the storage of claims, providing telephone support, reviewing and maintaining settlement funds, etc. According to Mr. Radetich,

8

these costs total nearly $331,000, including $153,000 attributable to an increase in the cost of paper !

None of these costs fit within the allowable taxable costs under Rule 39, nor are they analogous to any of the costs specifically itemized in Rule 39. Moreover, the claims period in this case is not set to expire until the fourth quarter of 2010. Plaintiffs assume, without any foundation or explanation, that the appellate process will take 15 months <u>beyond</u> the fourth quarter of 2010 and all of these cost estimates are based on this assumption.

Plaintiffs' reliance on <u>In re NASDAQ Market-Makers Antitrust Litigation</u>, 187 F.R.D. 124 (S.D.N.Y. 1999) is unpersuasive. That case involved a class member who had been found by Judge Sweet to be using the appeal process to extract payment from various defendants for unrelated claims; had engaged in vexatious and nettlesome litigation relating to the case; and was sanctioned under Rule 11. None of those facts apply to Mr. Berger.

**3.      Attorneys' fees are not a cost to be included in a Rule 7 appeal bond.**

The purpose of a bond for costs is to provide security for the payment of such costs that may be awarded to plaintiffs under the provisions of Rule 39 if appellants are unsuccessful in their appeals. For the most part, the costs secured by Rule 7 bonds are limited to costs taxable under Rule 39. <u>See</u> <u>16A C. Wright, A. Miller & E. Cooper</u>, Federal Practice and Procedure § 3953 at 280 (1996); <u>see</u> <u>also</u> <u>Adsani v. Miller</u>, No. 96-9593, 1997 WL 33774152 at *19 (Feb. 26, 1997).

Neither Rule 7 nor Rule 39 includes any reference to attorneys' fees that may be assessed on appeal. In fact, seven sister circuits have concluded that the term "costs" does not include attorneys' fees even if an underlying statute explicitly permits an award. <u>See</u> <u>e.g</u>. <u>McDonald v. McCarthy</u>, 966 F.2d at 112; <u>Chemical Mfrs. Ass'n v. United States EPA</u>, 885 F.2d 1276, 1278 (5th Cir. 1989); <u>Lattimore v. Oman Constr.</u>, 868 F.2d 437, 440 n.6 (11th Cir. 1989); <u>Kelley v. Metropolitan County Bd. of Educ.</u>, 773 F.2d 677, 681 (6th Cir. 1985) (en banc), <u>cert</u>. <u>denied</u>, 474 U.S. 1083 (1986);

9

Robinson v. Kimbrough, 652 F.2d 458 (5th Cir. 1981); Terket v. Lund, 623 F.2d 29, 33 (7th Cir. 1980); Northern Plains Resource Council v. United States EPA, 670 F.2d 847, 848 n. l (9th Cir. 1982) (attorneys' fees recoverable under the Clean Air Act are not the same as "costs" under Rule 39), vacated on other grounds, 464 U.S. 806 (1983); Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F.2d 61, 91 (1st Cir. 1970).

Plaintiffs rely on the case of Adsani v. Miller, et al., 139 F. 3d 67 (2d Cir. 1997) for the proposition that an appellant may be required to bond attorneys' fees. That case, however, involved a copyright infringement claim and a federal statute that provided for an award of attorneys' fees to the prevailing party. In addition, the appellant in that case was the losing party, not an objector to a class action settlement. Here, the appeal is not being pursued under a federal statute with an attorneys' fee provision. This distinction was acknowledged by the court in In re AOL Time Warner Inc. Securities And ERISA Litigation, 2007 WL 2741033 (S.D.N.Y. 2007), in which Judge Kram stated that "[i]n this case, there is no relevant underlying statute that provides for the awarding on appeal of costs incident to delay, and such costs are not listed in Appellate Rule 39." Id. at p. 4.[2] Sckolnick v. Harlow, 820 F.2d 13 (1st Cir. 1987), like In re NASDAQ, involved a recalcitrant plaintiff that the court deemed to be engaging in vexatious, frivolous litigation. Again, there are no such facts in this case.

### III. CONCLUSION

For the reasons stated above, appellant Berger respectfully requests this Court deny plaintiffs' request for an order requiring appellants to jointly and severally post an appeal bond in the amount of $571,920.

---

[2] Contrary to plaintiffs' assertion, appellant Berger did not brought his appeal under the Clayton Act. The Clayton Act is not relevant to this appeal and thus, requiring the bond to include attorneys' fees is not appropriate.

Dated: January 4, 2010
      New York, New York

                           Respectfully,

                            OSBORN LAW, P.C.

                            <u>S/ Daniel A. Osborn</u>
                            Daniel A. Osborn, Esq.
                            295 Madison Avenue, 39th Floor
                            New York, New York 10017
                            T:  (212) 725-9800
                            F:  (212) 725-9808

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X
In re CURRENCY CONVERSION FEE       MDL Docket No. 1409
ANTITRUST LITIGATION                and
                                    Baker v. VISA, 06-CV-0376 (S.D.Cal.)

_____        **CERTIFICATE OF SERVICE**

This Document Relates To:

ALL ACTIONS.
-------------------------------------------------------X

I, Daniel A. Osborn, declare and certify as follows:

I am over the age of 18 and not a party to this action. I am a member of OSBORN LAW, P.C. in New York County, State of New York.

My business address is OSBORN LAW, P.C., 295 Madison Avenue, 39th Floor, New York, New York 10017.

On the 4th day of January, 2010, I served by the courts Electronic Case Filing Service the foregoing **OPPOSITION TO PLAINTIFFS' REQUEST FOR AN APPEAL BOND**, together with this **CERTIFICATE OF SERVICE** upon the parties on the attached service list.

I declare under the penalty of perjury under the laws of the United States of America that this statement is true and correct.

Executed on January 4, 2010 at New York, New York.

                                                    s/Daniel A. Osborn
                                                  Daniel A. Osborn

George A. Cumming Jr., Esquire
MORGAN LEWIS & BOCKIUS, LLP
One Market Street, Spear Tower
San Franscisco, CA 94105

David F. Graham, Esquire
Eric H. Grush, Esquire
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603

Charles E. Buffron, Esquire
Robert D. Wick, Esquire
COVINGTON & BURLING
1201 Pennsylvania Avenue, NW
Washington, DC 20004

Daniel H. Squire, Esquire
Christopher R. Lipsett, Esquire
Wilmer Cutler Pickering, Hale & Dorr, LLP
2445 M Street, NW
Washington, DC 20037

Peter E. Greene, Esquire
Cyrus Amir-Mokri, Esquire
Skadden, Arps, LLP
Four Times Square
New York, NY 10036

Mark P. Ladner, Esquire
William R. Wade-Gery, Esquire
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, NY 10104

Edward D. Rogers, Esquire
BALLARD, SPAHR, ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

Edward C. Fitzpatrick, Esquire
Randall A. Hack, Esquire
Locke Lord Bissell & Liddell, LLP
111 South Wacker Drive
Chicago, IL 60606

Jay N. Fatsow, Esquire
DICKSTEIN SHAPIRO, LLP
1633 Broadway
New York, NY 10019

Brian P. Brosnahan, Esquire
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
101 California Street, Suite 2050
San Francisco, CA 94111

Dennis Stewart, Esquire
HULETT, HARPER STEWART, LLP
525 B. Street, Suite 760
San Diego, CA 92101

Merrill G. Davidoff, Esquire
Ted Millstein, Esquire
BERGER & MONTAGUE, PC
1622 Locust Street
Philadelphia, PA 19103-6305

Bonny E. Sweeney, Esquire
Christopher Burke, Esquire
Coughlin Stoia, Geller Rudman & Robbins
655 West Broadway, suite 1900
San Diego, CA 92101

Bob J. Vizas, Esquire
ARNOLD & PORTER LLP
27th Floor
275 Battery Street
San Francisco, CA 94111-3305

Irving Bizar, Esquire

Ballon Stoll Bader & Nadler, P.C.  New York, NY  10018
1450 Broadway, 14th Floor

14