

# LAW OFFICES of BRIAN BARRY

Brian Barry
Bribarry1@yahoo.com

USA: admitted in CA
UK: Solicitor

VIA ECF AND FEDERAL EXPRESS

June 10, 2011

Hon. William H. Pauley
United States District Judge
United States District Court for the
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: Foreign Currency Conversion Fee Antitrust Litigation
**MDL No. 1409**

Dear Judge Pauley:

My firm is one (1) of 31 Plaintiffs' Counsel in the above-noted action. Pursuant to your Honor's rules, I write this letter to request a pre-motion conference. The motion for which I request permission to file seeks an Order to implement a plan for allocating the attorneys' fees awarded by this Court in the instant action. Specifically, I am asking this Court to enter an Order: (1) requiring Co-Lead Counsel to propose a plan for allocation of the attorneys' fees; (2) requiring Co-Lead Counsel to disseminate that plan to all Plaintiffs' counsel prior to any fee distributions; (3) requiring all Plaintiffs' counsel to make their best efforts to resolve any disputes with regard to the plan without further Court intervention; and (4) setting forth a schedule for bringing any unresolved disputes to the Court for resolution.

Since late 2010, on a number of occasions, I contacted Co-Lead Counsel via detailed letters and e-mails to request that they engage in the process described above. Initially, in November 2010, I proposed that Co-Lead Counsel agree to engage in this process. At that time, Co-Lead Counsel refused to discuss the matter as they deemed the process unnecessary while appeals were pending. Now, all of the appeals are resolved, with the last appeal, the <u>Bildstein</u> matter, dismissed on May 10, 2011.

OF COUNSEL

| Jeffrey Shea | Rick Xiao | Zeljka Ulan |
| Sheaj_2000@yahoo.com | Ricxiao@hotmail.com | Zulan007@aol.com |
| Kathleen Langan | Natalia Feldgun | Nicole Perefege |
| Kathleen.langan@gmail.com | Natasha@stanfordalumni.org | Nicoleperefegeesq@verizon.net |

1801 Avenue of the Stars, Suite 307 • Los Angeles, California 90067 • Telephone: (310) 788-0831

Therefore, I once again requested that Co-Lead Counsel agree to the above process. After providing no response for sometime, Co-Lead Counsel ultimately stated it would not agree to engage in any allocation plan. Specifically, Mr. Davidoff wrote an email to me on May 20, 2011, stating, in salient part:

> Unfortunately, there is very little to discuss as the cut in the fees awarded by Judge Pauley will leave the class counsel with a very small, or no, multiplier when all the additional hours that have been spent and that will be spent to respond to class inquiries are factored in.
>
> \* \* \*
>
> Lead counsel, who prosecuted the case, and achieved the settlement, are entitled to some multiplier out of what little excess over lodestars will remain.
>
> \* \* \*
>
> In due course, we'll explain the distributions we make to class counsel (when they are made) and, of course, you will have an opportunity to pursue your grievances, if any, with Judge Pauley, at that time.

The fee awarded by this Court was $51,250,000, which represents a 1.6 multiplier over the total lodestar of $31,990,501. Co-Lead Counsel's contention -- that there is "little excess over lodestar" – once their additional hours are factored into the equation, necessitates the conclusion that they claim to have incurred a lodestar close to $19 million since January 2008.[1] As the above statements make clear, Co-Lead Counsel intends to award themselves this unjustified amount *and* pay themselves additional monies by applying a positive multiplier to *all* of their work –- both the work already justified to the court and this new, undocumented work. I believe it is improper for Co-Lead Counsel to award themselves exorbitant fees for time not vetted by this Court; particularly when no proof of time spent has been presented to other counsel involved in the action. Interestingly, when I suggested that a motion for an additional award of fees could be brought, Mr. Davidoff stated he would not bring such a motion.

---

[1] $51,250,000 (fee awarded) less $31,990,501 (total lodestar at time of fee award) is equal to $19,259,499. Co-Lead Counsel's claim that work done since the 2008 settlement approval justifies an additional lodestar of $19 million is astonishing as actual litigation since that time has been minimal. While Co-Lead Counsel is undoubtedly working with the claims administrator on a variety of issues relating to claims processing, such tasks are the norm in any class action and lead counsel typically does not get paid for this time. Further, it is inconceivable for lead counsel to claim tens of millions in time for these tasks

Additionally, the proposed procedure for distributing the fees (a unilateral decision by Co-Lead Counsel and subsequent disbursement of checks to all other counsel) is untenable. As the court in In re Diet Drugs Prods. Liab. Litig., 401 F.3d 143, 173 (3d Cir. 2005) stated, ". . lead counsel has an incentive to undercompensate non-lead counsel, as such compensation typically decreases lead counsel's own recovery." Similarly, in In re High Sulfur Content Gasoline Products Liability Litigation, 517 F.3d 220, 233-234 (5th Cir. 2008) the Fifth Circuit found the trial court erred when it deferred to the fee allocation proposed by a select committee of attorneys with a direct conflict of interest.  Id. at 173-174 (citing Diet Drugs) (holding that affording substantial deference to fee allocation when a conflict of interest is present is inappropriate). The court vacated the allocation of attorneys' fees and remanded for further hearing and stated, "[i]t is one thing for all attorneys to come to an agreement about dividing up fees, and quite another for five attorneys to declare how an award will cover themselves and seventy-four other attorneys with no meaningful judicial supervision." Id.

Moreover, the procedure Co-Lead Counsel intends on implementing does not provide a procedure whereby counsel may attempt to resolve any differences amongst themselves.  Thus, the only remedy would be to burden the Court.  With 31 Plaintiffs' firms involved in the case, there is an obvious potential for numerous disputes relating to the allocation of over $51 million.  This is particularly true given the fact that at least ten (10) firms were intimately involved in the case despite a lack of designation as Co-Lead Counsel.[2]

Thus, I believe it would behoove this Court to follow the example set in In Re IPO Securities Litigation, 21 MC 92 (S.D.N.Y.) (hereinafter referred to as "IPO")[3] currently pending before Judge Scheindlin and implement a similar, if not the same, process for fee allocation and distribution.

In IPO, while the appeals process was barely underway and distribution was not only far off, but uncertain, the Judge determined that there was no downside to resolving the issue of fee distribution sooner rather than later - only an upside. To that end, Judge Scheindlin stated:

> ". . . because it's to the interest of all the counsel to know what their fees will be, it really doesn't matter, it seems to me, whether the money is there to be allocated now. It will be there if the settlement survives, so we might as well work out the allocation including any dispute of the allocation and any approach to the Court to resolve such a dispute so that it's ready on an if-and-when basis.

---

[2] The intimate involvement of these ten (10) firms is emphasized by the fact that although there are 31 Plaintiffs firms involved, when the Third Amended Complaint was filed in July 2006, just before the settlement was reached, only ten (10) firms were listed in addition to Co-Lead Counsel.

[3] IPO is another protracted mega fund case.

3

> I don't see putting it off and then losing another six months or nine months quarreling about it when we could be ready to go if and when the settlement is final. So in my view it makes a lot more sense for you to sit down, if you think in the first instance you're supposed to make the allocation, it seems to me to make a lot more sense for you to determine the fees, determine how you want to allocate the fees, let that be known to everybody concerned.
>
> If it's not an acceptable resolution to everybody concerned, then the folks who aren't happy can come to the Court. I'll have plenty of time for briefing, plenty of time to resolve it, and everybody will know what it will be if and when the settlement is final.
>
> But if you won't even start until it's final, you're going to lose another six months, eight months, ten months. Why shouldn't we be efficient and do it now?
>
> So I really don't buy your argument that because it isn't final yet and the money isn't there yet, you shouldn't determine the allocations. It's an allocable share kind of procedure. It's going to be X percent for you and X percent for, you know, Mr. Isquith and X percent for Mr. Siebott and X percent for Mr. Sirota.
>
> So do it. Figure out the percents -- stop -- figure out the percents you think are right, let it be known, and then people can come to court if they disagree and plus briefing plus deciding -- who knows? We may get done the same time the court of appeals gets done, so it's efficient."

IPO, 21 MC 92, Tr. 6:25-8:9 (S.D.N.Y. April 2, 2010). (For the Court's convenience, attached as Ex. 1 is the complete transcript).

The fee allocation procedure proved to be extremely useful in the IPO action. Specifically, after the executive committee made a proposal, many, if not most of the other firms objected. There was much back and forth among Plaintiffs' Counsel and discussions were held regarding the methodology the executive committee used. As a result, circulation of a revised proposal occurred with a new methodology and only two (2) of over 50 firms filed objections with the Court

As noted above, my efforts to have Co-Lead Counsel implement a fee distribution procedure have been rejected. Given the foregoing, although I regret having to burden the Court with this matter, it appears judicial intervention will be needed. As I will have to travel to New York from Los Angeles for the conference, I would respectfully ask that I be given at least 5 days notice of the date for the conference.

Respectfully Submitted,

Brian Barry

cc: (VIA ECF) all counsel