UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re CURRENCY CONVERSION FEE ANTITRUST LITIGATION | x : : : : : | MDL Docket No. 1409<br><br>Master File No. 21-95 |
| This Document Relates To:<br><br>ALL ACTIONS EXCEPT<br>  ROBERT ROSS, et al. v. BANK OF<br>  AMERICA, N.A. (USA), et al., No. 05-7116 | : : : : : : : : : : : : : x | |

**PLAINTIFFS' LEAD COUNSEL'S MEMORANDUM
IN SUPPORT OF THEIR MOTION FOR AN ORDER
DIRECTING CLASS MEMBER KEVIN POLLINS TO CEASE AND DESIST FROM
<u>FURTHER COMMUNICATIONS WITH PLAINTIFFS' LEAD COUNSEL</u>**

Plaintiffs' Lead Counsel[1] in the matter *Ross, et al. v. American Express Company* ("*American Express*"), No. 04-5723 (S.D.N.Y.), a related matter in *In re Currency Conversion Fee Antitrust Litigation* ("*CCF I*"), MDL No. 1409, Master File No. M21-95 (S.D.N.Y.), respectfully submit this Memorandum in support of their motion for an order directing class member Kevin Pollins to cease and desist from: (i) demanding an additional payment of up to $20,000 from the settlements of the foreign transaction fee claims in *CCF I* and *American Express* (collectively referred to as the "FX fee settlements"), which demand this Court previously rejected; and (ii) further contacting Plaintiffs' Lead Counsel.

While Plaintiffs' Lead Counsel has made every effort to explain to Mr. Pollins the nature of the FX fee settlements and the reasons why he is not entitled to the payment he demands, as well as repeatedly reminding him that the Court denied his separate application (which he did not appeal), Mr. Pollins continues to contact Plaintiffs' Lead Counsel – often insistently – to press his demand. He continues to do so despite counsel's requests that he stop. Unfortunately, Mr. Pollins' communications have become increasingly more harassing and disruptive of the orderly and efficient administration of the FX fee settlements, as well as counsel's regular business. It is with regret that Plaintiffs' Lead Counsel now seeks the Court's assistance to direct that Mr. Pollins cease further communications.

## BACKGROUND

Mr. Pollins is an FX fee class member who received the minimum distribution payment amount in each of the two distributions from the FX fee settlements. *See* Declaration of David A. Langer, at Exhibit 1 ("Langer Decl. Ex. __"). The settlement administrator's records indicate

---

[1] The term "Plaintiffs' Lead Counsel" means Berger & Montague, P.C., and its attorneys and staff, including without limitation Merrill G. Davidoff, David A. Langer and Susan Leo.

that Mr. Pollins cashed the first distribution check (issued with the initial *CCF I* distribution), but that he has not yet cashed the second distribution check. *See id.*

After receiving the first distribution check, Mr. Pollins wrote Plaintiffs' Lead Counsel, on March 2, 2012, demanding that he receive an additional $20,000 payment (the "Additional Payment"). *Id.* at Ex. 2. On March 26, 2012, he wrote the Court to press his request for the Additional Payment, which he claimed was attributable to payments he made in connection with a fraudulent online business venture. *Id.* at Ex. 3. On March 30, 2012, plaintiffs in the *American Express* matter moved for final approval of that settlement, which papers included a copy of Mr. Pollins' March 2, 2012 letter.[2] Lead Counsel served Mr. Pollins with a hard copy set of the final approval papers. *Id.* at Ex. 4 (certificates of service). Mr. Pollins wrote the Court a second time, on April 18, 2012, concerning his demand for the Additional Payment. *Id.* at Ex. 5. On April 30, 2012, the Court granted final approval of the *American Express* settlement. Mr. Pollins sent another letter to the Court, on May 29, 2012, again requesting that he receive the Additional Payment. *Id.* at Ex. 6. The Court denied his application on June 5, 2012. *Id.* Mr. Pollins did not appeal that Order nor did he appeal the *American Express* final judgment.

After receiving his second distribution check, Mr. Pollins wrote Plaintiffs' Lead Counsel, on June 25, 2013, to once again demand the Additional Payment. *Id.* at Ex. 7. Counsel received this letter just prior to the Fourth of July holiday and responded the following Monday, on July 8, 2013, with a written explanation concerning the FX fee settlements and the reasons why Mr. Pollins was not entitled to the money he kept demanding. *Id.* at Ex. 8 (also enclosing the Court's June 5, 2012 Order denying his application). On July 18, 2013, Mr. Pollins wrote another letter

---

[2] The settlement papers referenced in this Memorandum are not included as exhibits to the Langer Decl. Should the Court need or request courtesy copies of any of these materials, Plaintiffs' Lead Counsel will promptly provide them.

insisting he receive his requested payment.  *Id.* at Ex. 9.

During this same period of Mr. Pollins' writing campaign, he also contacted Plaintiffs' Lead Counsel by telephone on numerous occasions, often calling multiple individuals on the same day.  In the course of these many conversations with Mr. Pollins, counsel and support staff endeavored to explain the subject matter of the FX fee lawsuits, what claims were settled, and how the settlement distribution process worked.

Throughout these communications, Mr. Pollins aggressively pursued his improper demand for the Additional Payment.  When Plaintiffs' Lead Counsel, or their support staff, tried to explain that Mr. Pollins received the same consideration and treatment as any other class member, and that his demand was both without merit and already rejected by the Court, he would often respond with wild accusations concerning counsel's responses to his demands, *e.g.*, that his claim had been "botched" even though he was sent two distribution checks, or that Plaintiffs' Lead Counsel had reneged on a "deal" to pay him the Additional Payment despite that no such "deal" existed.  Certainly no later than June 2013, Mr. Pollins' communications became more frequent and insistent.

By the fall of 2013, it was evident that Mr. Pollins remained utterly unreceptive to the information and explanation repeatedly provided by counsel, and on October 14, 2013, Plaintiffs' Lead Counsel wrote Mr. Pollins to request that he cease further communications on this subject.  *Id.* at Ex. 10.  Mr. Pollins telephoned Plaintiffs' Lead Counsel again on October 21 and October 28.  *Id.* at Exs. 11 & 12 (voice message transcriptions).  With regret, on October 29, 2013, Plaintiffs' Lead Counsel wrote Mr. Pollins stating that his calls had become increasingly more threatening and that if he did not cease, counsel would be forced to seek assistance from the appropriate authorities, including the office of the Attorney General of his state.  *Id.* at Ex. 13.

Mr. Pollins called again, on November 4, 2013, stating that his calls would not stop until

he received his payment. *Id.* at Ex. 14 (voice message transcription). That same day, Plaintiffs' Lead Counsel wrote once more urging Mr. Pollins to stop contacting counsel, explaining again that it was not possible to pay him the Additional Payment, reminding him again that the Court had denied his application (enclosing another copy of that order), and informing him that counsel would seek the Court's assistance to stop further communications by Mr. Pollins. *Id.* at Ex. 15.

Mr. Pollins has continued to contact counsel. Following a brief respite over the holiday season, Mr. Pollins telephoned Plaintiffs' Lead Counsel, on January 23, 2014, leaving a message where he stated he had mailed counsel a "failure to comply order" directing that he receive the Additional Payment. *Id.* at Ex. 16. On January 27, 2014, counsel received a package of materials that Mr. Pollins had mailed which included a handwritten letter (dated January 21, 2014, and also addressed to the Court) insisting that counsel "Surrender my [$]19,971.77 paycheck," as well as photocopies of prior correspondence and other materials. *Id.* at Ex. 17. He again contacted counsel by phone on January 28, 2014, reiterating his demand and requesting a date for when he would receive his check. *Id.* at Ex. 18.

## ARGUMENT

Because Mr. Pollins' communications are threatening, harassing and disruptive of Plaintiffs' Lead Counsel's ability to manage the settlement administration, as well as disruptive of counsel's regular business, counsel respectfully request that the Court enter an order directing Mr. Pollins to cease and desist his unwarranted demand for the Additional Payment from the FX fee settlements and that he cease contacting Plaintiffs' Lead Counsel concerning this improper demand. Mr. Pollins is subject to the Court's jurisdiction, and the Court possesses the authority to provide the requested relief, pursuant to Rule 23(d) of the Federal Rules of Civil Procedure (as well as pursuant to Rule 83(b)).

In granting final approval of the two FX fee settlements, the Court expressly retained

jurisdiction over the FX fee class members, including Mr. Pollins, as well as any issues arising in connection with a claim submitted by a class member.  For example, the *American Express* final judgment states that "[t]his Court has jurisdiction over the subject matter of this Matter and over all Parties before the Court, including, without limitation, the FX Damages Class Members." *American Express* Order and Final Judgment Approving the Settlement, at ¶ 1 (Apr. 30, 2012; *CCF I* Dkt. No. 948) (Langer Decl. Ex. 19).  The final judgment further provides that "[w]ithout in any way affecting this Order and Final Judgment, the Court retains exclusive jurisdiction over this Matter to consider all further matters arising out of or connected with the Settlement Agreement and this Order and Final Judgment, including, but not limited to, any disputes relating to or arising out of the Released Claims." *See id.* at ¶ 17.  The *CCF I* final judgment contains similar provisions.  *See CCF I* Final Judgment and Order of Dismissal, at ¶¶ 2, 18 (Nov. 4, 2009; *CCF I* Dkt. No. 763) (Langer Decl. Ex. 20).[3]  The Court, therefore, has jurisdiction to issue a cease and desist order concerning Mr. Pollins' repeated demands that he receive the Additional Payment from the FX fee settlements.

Rule 23(d) of the Federal Rules of Civil Procedure provides the Court with the authority to issue a variety of orders to properly manage class actions.  *See* Fed. R. Civ. P. 23(d)(1)(E); *see also* 7B CHARLES A. WRIGHT, ET AL., FED. PRAC. & PROC. CIV. § 1796 (3d ed. 2013) ("Rule 23(d)[(1)(E)] was included to make it clear that the district court has great flexibility in [controlling the conduct of a class action]."); *see also Jack Faucett Assoc., Inc. v. AT&T Co.*, No. 81-1804, 1985 WL 25746, at *5 (D.D.C. 1985) (noting that district court "pursuant to Rules

---

[3] When the Court approved the Residual Allocation Plan, it also reserved jurisdiction to address issues arising from that distribution: "The Court approves the Residual Allocation Plan, orders its implementation and effectuation, and retains jurisdiction to supervise the implementation and effectuation of the Residual Allocation Plan."  *See* Order Approving the Residual Allocation Plan, at ¶ 1 (Apr. 30, 2012; *CCF I* Dkt. No. 946) (Langer Decl. Ex. 21).

23(d)(5) and 83, … has the duty and authority to restrict communications that interfere with the proper administration of a class action").[4]  The Supreme Court has instructed that "[b]ecause of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co v. Bernard*, 452 U.S. 89, 100 (1981).  "Rule 23(d) does not, however, require a finding of *actual* harm; it authorizes the imposition of a restricting order to guard against the '*likelihood* of serious abuses.'" *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (quoting *Gulf Oil*, 452 U.S. at 104) (emphasis in original); *see also Cobell v. Norton*, 212 F.R.D. 14, 19 (D.D.C. 2002).

This Court previously invoked the authority provided by Rule 23(d) to manage communications involving MDL 1409 class members.  *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252-53 (S.D.N.Y. 2005) (Pauley, J.).  In that instance, the Court found that certain issuing banks' notices adding arbitration clauses constituted misleading communications that threatened to limit the choice of remedies available to FX fee damages class members.  *Id.*  Invoking Rule 23(d), the Court found the communications improper (and the arbitration clauses unenforceable as to certain class members), explaining that a "court's authority under Rule 23(d) is not limited to communications that actually mislead or otherwise threaten to create confusion, but extends to communications that interfere with the proper administration of a class action." *Id.*; *see generally id.* at 252-54; *see also Cobell*, 212 F.R.D. at 19; *Sorrentino v. ASN Roosevelt Ctr. LLC*, 584 F. Supp. 2d 529, 532 (E.D.N.Y. 2008) (Spatt, J.).

An order for relief pursuant to Rule 23(d) should be made on the basis of a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential

---

[4] Similarly, Rule 83(b) entrusts federal judges with the power to "regulate practice in any manner consistent with federal law … and the district's local rules" where there is no controlling law.

interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101.  Additionally, the relief granted "should result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Id.* at 102.  Both of these factors, which are generally analyzed under a good cause standard, are present here.  *See id.* at 102 n.16 (referencing Rule 26(c) good cause standard in Rule 23(d) context).

      The record reflects that Mr. Pollins was afforded numerous opportunities to contact and communicate with Plaintiffs' Lead Counsel, both in writing and via phone call conversations with counsel, concerning his FX fee claim and the reasons why he is not entitled to the Additional Payment he demands.  He also availed himself of the opportunity to seek relief from the Court, including writing the Court directly at least three times (and, most recently, a fourth time).  He received a ruling from the Court denying his application.  Mr. Pollins also received Plaintiffs' Lead Counsel's final approval submissions in *American Express*.  He could have elected to appeal the Court's denial of his application, or even the final approval of the *American Express* FX fee settlement, but declined to do so.  His claim for $20,000 from the FX fee settlements is frivolous in any event.

      Mr. Pollins, by his conduct and communications, has demonstrated that he is unwilling to accept both the Court's denial of his application for the Additional Payment and counsel's explanations concerning the same.  Mr. Pollins is simply (and persistently) mistaken as to the propriety of his demand for the Additional Payment, or he is attempting to extract funds he knows he is not entitled to receive by fraud, coercion and threats.  In either case, it is unreasonable for Mr. Pollins to engage in an ongoing pattern of disruptive communications repeating the same demand and rejecting the corresponding explanations about the impropriety of his demand.  No purpose is served from covering the same ground *ad nauseam*.  His repeated phone calls and letters have consumed numerous attorney and professional support staff hours,

and they are interfering with the orderly and efficient administration of the settlement, including unnecessarily increasing administrative costs. More alarming is that Mr. Pollins' calls have become more assertive and aggressive; the tenor of the communications more threatening and harassing.

Good cause, therefore, exists for the entry of an order directing Mr. Pollins to cease and desist from further communications with Plaintiffs' Lead Counsel. (Plaintiffs' Lead Counsel do not know the full extent of Mr. Pollins' communications with the Court, but if those communications follow the same pattern as his communications with counsel, the Court may wish to expand the scope of the proposed cease and desist order to also reach communications with the Court.)

Further, the relief counsel requests is narrowly tailored to prohibit that Mr. Pollins cease repeating his (rejected) demand and that he stop contacting Plaintiffs' Lead Counsel concerning his improper demand. Mr. Pollins' right to participate in the FX fee settlements remains unaffected.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Lead Counsel respectfully request that the Court direct Mr. Pollins to cease and desist: (i) demanding the Additional Payment from the MDL 1409 FX fee settlements, which demand this Court previously rejected; and (ii) further contacting Plaintiffs' Lead Counsel.

DATED:  June 19, 2014                    Respectfully submitted,

                                                BERGER & MONTAGUE, P.C.
                                                MERRILL G. DAVIDOFF
                                                DAVID A. LANGER

                                                */s/ David A. Langer*
                                                DAVID A. LANGER

                                                1622 Locust Street
                                                Philadelphia, PA  19103
                                                Telephone:  215/875-3000
                                                215/875-4604 (fax)

                                                *Lead Counsel for Plaintiffs*